IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


KATHRYN JEZWINSKI                                                                              PLAINTIFF


v.                                              CASE NO.  4:08CV4211 JMM


CITY OF JACKSONVILLE, ARKANSAS, ET AL.                                    DEFENDANTS

### ORDER

Pending before the Court is Defendants' Motion for Summary Judgment (#37) and Plaintiff's Motion to Strike (#50).  For the reasons stated below, Defendants' motion is denied and Plaintiff's motion is dismissed as moot.

Plaintiff contends that Defendants violated her First Amendment rights in violation of 42 U.S.C. § 1983 and discriminated against her in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA") by terminating her employment.

Defendants contend that (1) Plaintiff is precluded from bringing a § 1983 First Amendment claim because USERRA is a comprehensive statutory scheme which forecloses § 1983 claims; (2)  Plaintiff's has failed to state a USERRA claim because she has failed to establish that her military service or complaints about her attempts to join the military service were motivating factors in her termination; and (3) Defendants have come forward with a legitimate nondiscriminatory reason for Plaintiff's termination.

*Facts*

In August of 2005, the City of Jacksonville ("the City") hired Plaintiff as Deputy City Clerk. The City Clerk department consists of two positions – City Clerk and Deputy City Clerk. Defendant Susan Davitt is the City Clerk.

Plaintiff applied for the military in October of 2005. On July 27, 2006, the day Plaintiff was sworn into the military, Plaintiff informed Davitt that she had joined the military. Plaintiff, prior to speaking with Davitt about potential military service, told Charlie Brown, the then Human Resource Director for City of Jacksonville, that she had applied to join the military.

In October of 2006, Plaintiff left her position to perform her military obligations. Before leaving, Plaintiff filed a formal complaint with Brown, against Davitt contending Davitt had expressed concerns because Plaintiff had failed to inform Davit that she had been in the process of joining the Air National Guard. According to Plaintiff, Davitt also wanted to know how long Plaintiff had been trying to get into the military and Plaintiff told her a couple of months when in reality it had been an almost year long process.

Upon learning that Plaintiff would be taking a leave of absence for military training, Davitt told Plaintiff that Davit did not know if her job could be held. Davitt admits that she complained that she had not been informed by Plaintiff of an intent to join the National Guard until she was actually sworn into the military.

Brown testified that when Plaintiff joined the Arkansas National Guard, Davitt told him that she did not think women belonged in the military services. Davitt denies making this statement to Plaintiff. Plaintiff testified that when she told Davit that she had joined the military, Davit became critical and told Plaintiff that she did not trust Plaintiff and that she had no respect

for her.

After completing her military obligations, Plaintiff returned to work in October of 2007. The City placed Plaintiff back in the Deputy City Clerk position. Plaintiff received all the raises that she would have received had she not left for military duty.

Plaintiff testified that upon returning to work, Davit was critical of her work and asked her if mistakes were part of her military training.

In January of 2008, the City held an election. The voting booths were placed along the outside wall of City Hall, with the screens facing the City Clerk's office. During the voting process, Davitt attended a meeting which left Plaintiff as the only employee in the office. Davitt called Plaintiff to ensure that everything was going well. During the call, Plaintiff informed Davitt that she had seen how "nine out of ten people" were marking their ballots on a particular issue. Davitt testified that she told Plaintiff that it was against the law for Plaintiff to watch people mark their ballots. Plaintiff testified that after her conversation with Davitt, she tried not to watch anymore of the balloting process but admits that she subsequently saw one or two people marking ballots.

The following morning, Plaintiff and Davitt had a conversation regarding Plaintiff's admission that she watched people casting their ballots. Plaintiff told Davitt that she could "see all of [the voting machines]" and that she could observe citizens marking their ballots "[b]y looking straight up from my desk."

In order to view the machine obstructed by the columns, Plaintiff admits she "had to turn my head to the left when I was picking up the phone – or putting something in the in-and-out box" in order to see one of the machines blocked by a column. On the same day, Davitt and Plaintiff had a meeting with Jill Ross, the Human Resource Director for the City, to discuss the events of the previous day.

After Davitt left that meeting, Plaintiff changed her version of events and told Ross that the number of people she witnessed voting was less than nine or ten. Plaintiff knew that this was an untrue true statement. Ross' testimony is that Plaintiff asked her to change Plaintiff's statement knowing it to be untrue, and that Ross refused. Ross told Davitt of Plaintiff's attempt to change her version of events.

Plaintiff testified that in February of 2008, a week before she was terminated, she told Davitt that she would be called to active duty in January of 2009. Davitt responded that it was probable that the war would be over by then. Plaintiff told Davitt that she would have to deploy regardless of the state of the war.

On February 4, 2008, Davitt terminated Plaintiff based upon her belief that Plaintiff intentionally observed how the citizens of Jacksonville were voting and because Plaintiff was untruthful about how many people she watched vote.

Specifically, Davitt wrote in the dismissal form that

> We have found that you have violated Section 35 of the City of Jacksonville's Policy Manual, which is described as a failure in personal conduct. In addition, Section 3 states that "From time to time, an offense of such serious nature will occur that dismissal is the only acceptable course of action." We have found that this offense is serious enough in nature that we are left with no other choice but to terminate your employment with the City of Jacksonville.

*Analysis*

Summary judgment is appropriate when there is no genuine issue of material fact and the dispute may be decided solely on legal grounds. *Seymour v. City of Des Moines*, 519 F.3d 790, 796 (8th Cir. 2008); Fed. R. Civ. P. 56. The initial inquiry is whether there are genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be

resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Where a motion for summary judgment is properly made and supported an opposing party must set forth specific facts showing a genuine issue for trial. *See* Fed.R.Civ.P. 56(e)(2).

> USERRA protects returning veterans and other uniformed service members when transitioning to civilian life, requiring reemployment in either the same position "or a position of like seniority, status and pay, the duties of which the person is qualified to perform." 38 U.S.C. § 4313(a)(2)(A); *see generally Clegg v. Ark. Dep't of Correction,* 496 F.3d 922, 930 (8th Cir. 2007). After reemployment, USERRA prohibits discrimination against veterans with respect to any benefit of employment on the basis of their membership, application for membership, performance of service, application for service, or obligation to perform service in the uniformed services. 38 U.S.C. § 4311(a). A benefit of employment is "any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice ..." 38 U.S.C. § 4303(2). Because USERRA was enacted to protect the rights of service members, it is construed broadly and "in favor of its military beneficiaries." *Clegg*, 496 F.3d at 930–31.
>
> An employer violates USERRA when veteran status is a motivating factor in the employer's adverse action, unless the employer proves that the action would have been taken in the absence of membership in the armed services. *Maxfield v. Cintas Corp.*, 563 F.3d 691, 694 (8th Cir.2009) ( Maxfield II ). The employee must initially show that military status was a motivating factor in an adverse employment decision, but an employer can then defeat the claim by proving "by a preponderance of evidence, that the action would have been taken despite the protected status." Id. In determining whether veteran status motivates the employer's conduct, all record evidence may be considered, including any explanation for the action taken. *Maxfield v. Cintas Corp.*, 427 F.3d 544, 551–52 (8th Cir.2005) ( Maxfield I ).

*Lisdahl v. Mayo Foundation*, 633 F.3d 712, 717-18 (8th Cir. 2011).

There is conflicting evidence on whether Davitt expressed an opinion regarding women serving in the military. There is evidence that Davitt became upset when Plaintiff informed her that she would be going on active duty and that Davitt was unsure whether Plaintiff's position would be held for her return. There is also conflicting evidence on whether Plaintiff intentionally or, by default, observed voters marking their ballots and if Plaintiff knew her actions in watching voters was illegal before being so informed by Davitt.

This disputed evidence is material and relevant to whether Plaintiff's military status was a motivating factor in her termination or whether she would have been terminated despite her protected status. Because these are material facts in dispute, Defendants' Motion for Summary Judgment is denied as to Plaintiff's USERRA claim.

Defendants cite *Morris-Haynes v. Board of Educ. Of Chester Union Free School Dist.*, 423 F.3d 153 (2d Cir. 2005) for the proposition that USERRA's comprehensive remedial scheme precludes a cause of action under § 1983.

The Court of Appeals for the Eighth Circuit in the case of *Clegg v. Arkansas Department of Corrections*, 496 F.3d 922 (8th Cir. 2007) affirmed the grant of summary judgment in a case which contained both a § 1983 claim and an USERRA claim. Based upon the Eighth Circuit's acceptance of both of these claims, the Court will deny Defendants' Motion for Summary Judgment on Plaintiff's USERRA claim.

Plaintiff's Motion to Strike seeks to preclude the use of Nikki Wilmoth's affidavit as evidence in deciding the instant Motion for Summary Judgment. Because it was not necessary to do so, the Court has not considered the affidavit in making its decision.

*Conclusion*

Defendants' Motion for Summary Judgment is denied. Plaintiff's Motion to Strike is dismissed as moot.

IT IS SO ORDERED THIS  23   day of   May  , 2011.

_____
James M. Moody
United States District Judge